| | |
|---|---|
| BUILDING TRADES UNITED PENSION TRUST FUND and DOUG EDWARDS (in his capacity as trustee),<br><br>Plaintiffs,<br><br>vs.<br><br>PETER SCHWABE, INC.,<br><br>Defendant. | Case No. 22-cv-1299 |

### DEFENDANT'S MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND COMBINED RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT AND MOTION TO LIFT THE STAY

Defendant Peter Schwabe, Inc. (hereinafter "PSI"), by and through its undersigned counsel, submits this motion to enforce the settlement agreement, which also serves as a combined response to Plaintiffs' Motion for Leave to Amend the Complaint and Motion to the Lift Stay. (Doc. 36 and 37).

I.     **INTRODUCTION**

This case revolves around the Plaintiffs' attempt to seek additional contributions to the Building Trades United Pension Trust Fund from Peter Schwabe, Inc. under a collective bargaining agreement between the Allied Construction Employers' Associations, Inc. *et al.* and the North Central States Regional Council of Carpenters (the "Union") that ran from June 1, 2020 through May 31, 2023.

The case originally presented two primary issues: 1) whether the Plaintiffs could conduct an audit of PSI for the period of January 1, 2020 to the present given that PSI contended it terminated the collective bargaining agreement and its relationship with the union effective June 1, 2020; and 2) whether PSI owed contributions for any work performed during the audit period.

II.     **PROCEDURAL HISTORY**

On April 18, 2023, the parties attended a mediation with Magistrate Judge Duffin. They reached a settlement on the first issue. The settlement agreement is attached as Exhibit A. In resolution of the first issue, the agreement provided, in relevant part, that PSI would submit to an audit for the time period of January 1, 2020 to December 31, 2021. The settlement agreement specifically outlined the parameters of the information PSI would be required to provide to the Plaintiffs as part of this audit:

- Payroll Registers, Individual Earnings Records, or Time Cards ("Previous audit used "Earnings Code Report")
- Quarterly 941's;
- Quarterly SUTA Reports;
- W-2's and W-3's;
- 1099's and 1096's; and
- Monthly Remittance Reports.

*See* Exhibit A at Exhibit 1.

Under the settlement agreement, the Fund is not entitled to any other information to conduct its audit. It is also undisputed that PSI provided this

information.

The settlement agreement also stayed the case for six months to allow the parties to exchange this information, for the Plaintiffs to process it, and for the Plaintiffs to issue any demand for additional contributions based on the audit results.

All of that has happened.

According to the Fund's own statement, the "audit was completed" and the "results of the audit [were] provided to counsel for [PSI]." ECF 37 at ¶ 2. The Plaintiffs then filed a second amended complaint removing the audit claim from the litigation. ECF 34. Thus, the first part of the lawsuit is over. The only remaining claim between the parties is whether PSI owes any contributions for any work it performed during the audit period.

### III. THE PLAINTIFFS' INAPPROPRIATE DEMAND AND REQUESTS

The audit, from the Plaintiffs' perspective, demonstrated that PSI's superintendents were doing covered work that required contributions and, to that end, Plaintiffs' have demanded a total of $600,330.06 in contributions. A copy of this demand is attached as Exhibit B. Essentially, and for the very first time in the decades of audits that Plaintiffs' have completed of PSI, Plaintiffs are now charging PSI for contributions for every hour PSI's thirteen superintendents, drivers, and managers worked from January 1, 2020 to December 31, 2021. Notably, Plaintiffs have *never* taken the position that PSI's superintendents, drivers and managers were

doing any work covered by the collective bargaining agreement (essentially direct carpentry or floor covering work)[1] any other PSI audit during the decades that PSI has been submitting to the very same audits. In the meet and confer process, Plaintiffs explained this about-face by pointing to nothing more than the Trustees' own speculation:

> The audit also billed for all hours worked by [PSI]'s . . . superintendents because . . . **the Trustees based on their own experience working on jobsites do not believe any claim [PSI] may make that its project superintendents would never perform carpentry work at the jobsite.**

*See* Exhibit D (emphasis added).

PSI initially offered to produce the employees' job descriptions and performance evaluations to establish that these superintendents, drivers, and managers were not performing carpentry work themselves, but rather supervising others (or driving) – a reality that has already been shared and demonstrated at numerous points in the litigation and accepted by the Fund for decades. Accordingly, and despite Plaintiffs' statement to the contrary, PSI did *not* indicate they would be unwilling to provide information beyond these job descriptions and performance evaluations.[2] PSI is ready and willing to demonstrate that its superintendents,

---

[1] The provisions of the CBA describing the scope of work for which contributions would be due to the pension fund are attached as Exhibit C.
[2] See email correspondence, attached as Exhibit D. ("We remain willing to work through what information the Fund might wish to see relating to PSI employees during the agreed-upon audit period….").

4

Case 2:22-cv-01299-NJ    Filed 10/26/23    Page 4 of 8    Document 38

drivers, and managers were not doing covered work calling for contributions. Unfortunately, and quizzically, however, Plaintiffs are insisting that the only way to establish that these PSI employees were not performing covered work is to learn what other non-PSI employees were doing. This position is both untenable and in bad faith.

First, what a non-employee of PSI might be doing has no bearing on what the superintendents were actually doing. Even if hypothetical contractor John Doe is building a wall, that says nothing about whether PSI's superintendent is also building a wall. Two people can be wielding hammers simultaneously, and the audit here has been and remains only about PSI employees and whether they did any covered work. Any discovery must be focused on what the *superintendents, drivers, and managers* were doing on the job.

Second, and perhaps even more significantly, Plaintiffs are using this dispute about what work the superintendents, drivers, and managers did as a back door to violate the settlement agreement and expand the scope of the audit. The Plaintiffs explicitly said that they asked for data on contractors "to evaluate how much may be owed for subcontracting provisions."[3] In other words, Plaintiffs want information

---

[3] The collective bargaining agreement provides that Employers covered by the agreement are required to sublet or contract out work covered by the collective bargaining agreement only to another employer that has signed or is covered by a written labor agreement with the Union. *See* Ex. B at Article 6(B). The Fund's newly-formulated claim, however, provokes a fundamental item - PSI's dispute that it is even covered by this collective bargaining agreement after June 1, 2020.

5

about the contractors to expand the scope of the audit to presumably increase their demand from $600,330.06 to some unknown number. Indeed, Plaintiffs proposed third amended complaint now seeks contributions for work that PSI allegedly subcontracted to non-union subcontractors. But, the audit claim – and the Plaintiffs' ability to get information from PSI to do an audit – was settled when the parties agreed to resolve that part of the case if PSI provided the items bulleted above. And, Plaintiffs have confirmed that they received all of that information and completed the audit. In short, Plaintiffs are explicitly using the dispute about what PSI employees did to reopen the scope of the audit to obtain information they never asked for before and have since waived the right to receive. Allowing the Plaintiffs to amend their complaint to expand the scope of the issues in this litigation violates the settlement agreement and is a waste of the parties' and the courts' resources in settlement. That is improper and violates the settlement agreement.

## IV. PROPOSED NEXT STEPS AND REQUESTED RELIEF

PSI remains willing to produce the superintendents', drivers' and managers' job descriptions and performance evaluations – or other discovery about what those people in fact did. PSI thus respectfully suggests that the Court order the following:

- Plaintiffs may not file an amended complaint that would, in effect, expand the scope of the audit dispute, thus violating the settlement agreement.

---

This dispute was addressed and resolved in the Settlement Agreement and, unfortunately, the Fund seems nonetheless intent on pursuing this issue.

- The case be reopened for the sole purpose of litigating whether the PSI employees were performing work covered by the collective bargaining agreement from June 1, 2020 through December 31, 2021.

- Rule 26(a)(1)(B) disclosures on this issue will be due within 14 days.

- The parties have a period of 90 days in which to take formal discovery on this issue.

- Plaintiffs may not seek information about contractors PSI did or did not use, as such requests violate the settlement agreement and are immaterial to whether or not the Plaintiffs' $600,330.06 assessment is substantiated and whether PSI's employees were performing work covered by the collective bargaining agreement.

- To the extent the parties have any discovery disputes, the parties may take advantage of the Court's normal dispute resolution process.

- At status conference after this discovery period (on or around February 15, 2024), the parties can communicate to the Court whether they would like a second settlement conference with the Court or if they need a briefing schedule for summary judgment and/or a pre-trial and trial schedule.

In short, PSI does not object, in principle, to the Plaintiffs' request to lift the stay for the limited purposes as set forth above. PSI does, however, object to a new complaint that seeks to expand the scope of the audit to seek contributions for contractors – as such complaint violates the settlement agreement reached by the parties, which limited the scope of the audit as set forth above. Plaintiffs' attempts to violate their agreement to expand the scope of the audit (whether as couched as a discovery request on the claim for $600,330.06 or as an amended complaint) must be rejected. PSI cannot be required to submit additional information, expanding the

scope of the audit as that claim has been resolved. The settlement agreement must be enforced.

Dated: October 26, 2023

Respectfully submitted,

/s/ *Michael S. Yellin*
Michael S. Yellin, Bar No. 1081448
Littler Mendelson, P.C.
111 East Kilbourn Avenue
Suite 1000
Milwaukee, WI 53202
Telephone: 414.291.5536
Facsimile: 414.291.5526
myellin@littler.com

Michael Congiu
Littler Mendelson, P.C.
1300 IDS Center
80 South 8th Street
Minneapolis, MN 55402
612-313-7656 (direct)
312-372-7880 (facsimile)
mcongiu@littler.com

Attorneys for Defendant
PETER SCHWABE, INC.