UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BUILDING TRADES UNITED PENSION TRUST FUND and
DOUG EDWARDS (in his capacity as Trustee),

   Plaintiffs,

v.                                          Case No. 22-CV-1299

PETER SCHWABE, INC.,

   Defendant.

## DECISION AND ORDER ON MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT, MOTION TO LIFT STAY, AND MOTION TO ENFORCE SETTLEMENT AGREEMENT

Currently before me are Building Trades United Pension Trust Fund's (hereinafter "the Pension Fund") motion to lift stay (Docket # 37) and motion for leave to file a third amended complaint (Docket # 36), as well as Peter Schwabe, Inc.'s motion to enforce settlement agreement (Docket # 38). For the reasons explained below, while the motion to lift stay is granted, the motions to enforce settlement agreement and for leave to file a third amended complaint are denied.

### RELEVANT BACKGROUND

The Pension Fund sues Schwabe for unpaid contributions pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, *et seq.* On February 17, 2023, the Pension Fund filed an amended complaint raising a single claim, violation of ERISA §§ 502 and 515. (Docket # 20.) Claim One, however, had two parts—access to Schwabe's books and records for a compliance audit ("the B&R Claim") and damages associated with any alleged delinquencies that may be discovered through the materials

sought through the B&R Claim ("the Delinquency Claim"). (*Id.*) Schwabe counterclaimed against the Pension Fund for Declaratory Judgment and Common Law Restitution, arguing that while it was subject to a collective bargaining agreement ("CBA") from June 1, 2017, through May 31, 2020, effective June 1, 2020, the CBA was no longer in effect and Schwabe was not subject to its terms. (Counterclaim ¶¶ 6, 8–11, Docket # 22.) Thus, Schwabe asserts that it had no obligation to make contributions to the Pension Fund after May 31, 2020. (*Id.* ¶ 20.)

The parties engaged in mediation on April 18, 2023 (Docket # 30) and resolved the B&R Claim (Docket # 31). On June 23, 2023, the parties entered into a settlement agreement in which Schwabe agreed to provide to the Pension Fund's auditor certain specific and enumerated records for all if its employees, aside from those employees that the Pension Fund agreed through the auditor should be excluded from the audit, for the period of January 1, 2020 through December 31, 2021. (Docket # 38-1 at ¶ 1.) As part of the settlement agreement, Schwabe agreed not to defend against an alleged delinquent contribution claim found in the audit on the basis that Schwabe was not bound to the CBA during that period. (Docket # 38-1 at ¶ 1.) The Pension Fund, in turn, agreed not to seek access to Schwabe's records for the time after December 31, 2021, and agreed it would not seek to collect any contributions, interest, liquidated damages, or attorneys' fees for hours worked by Schwabe's employees or contractors after December 31, 2021. (*Id.* ¶ 2.)

The parties stipulated to the Pension Fund filing a second amended complaint removing the B&R claim and leaving the Delinquency Claim. (Docket # 34.) The parties also requested that the case be stayed for up to six months to allow the parties to reach a settlement

on all outstanding issues. (Docket # 35.) The parties' motion to stay was granted on June 30, 2023.

On October 6, 2023, however, the Pension Fund filed a motion to lift the stay (Docket # 37) and a motion for leave to file a third amended complaint (Docket # 36). As part of the agreed upon audit regarding the B&R claim, Schwabe produced to the Pension Fund 1099 forms that it issued to its subcontractors in 2020 and 2021. (Docket # 36 at 1.) The Pension Fund asserts that after reviewing these documents, an information gap exists within Schwab's $1-2 million/year Small Projects Division. (Docket # 38-4 at 5–6.) While Schwabe asserts that it subcontracts out the entirety of this work, the Pension Fund contends that the 1099s produced in the audit did not "sufficiently demonstrate that all carpentry work" was performed by subcontractors. (*Id.* at 5.) Given the lack of clarity, the auditor attributed all of these unaccounted-for hours to Schwabe's superintendents. (*Id.*) The Pension Fund argues that Schwabe may owe additional contributions for this work. (*Id.*) The Pension Fund also questioned whether Schwabe was subcontracting its work to companies who were signatories to the CBA, as required by the CBA. (*Id.* at 4.) Schwabe counters that none of its employees performed covered work (i.e., direct carpentry or floor covering work) themselves, but merely supervised others or were driving. (*Id.* at 3–4.)

> The Pension Fund proposed the following solution to the parties' dispute:
>
> To resolve the audit billing for the hours worked by Peter Schwabe superintendents, Plaintiffs would need a list of projects in Milwaukee, Waukesha, Racine, Kenosha, Ozaukee and Washington Counties in 2020 and 2021; as well as an explanation (with subcontractor invoices if Peter Schwabe claims the carpentry work was performed by a subcontractor) for who performed carpentry work on each project.

(*Id.* at 4.) Schwabe, however, objects to this proposal, arguing that it fully complied with the terms of the settlement agreement, thus the B&R Claim is now resolved. (*Id.* at 3.) As such,

3

the Pension Fund is not entitled to documents from non-employees, such as subcontractor invoices. (*Id.*) Schwabe further argues that to the extent the Pension Fund contends that these non-employee documents will help resolve the remaining Delinquency Claim, it is unclear how. (Docket # 38 at 5.) Schwabe states:

> [W]hat a non-employee of [Schwabe] might be doing has no bearing on what the superintendents were actually doing. Even if hypothetical contractor John Doe is building a wall, that says nothing about whether [Schwabe's] superintendent is also building a wall. Two people can be wielding hammers simultaneously, and the audit here has been and remains only about [Schwabe] employees and whether they did any covered work. Any discovery must be focused on what the *superintendents, drivers, and managers* were doing on the job.

(*Id.*) (emphasis in original). But the Pension Fund counters that "[i]f Pete Schwabe's employees did not perform the carpentry work, then someone else must have," (Docket # 38-4 at 2) arguing that if Schwabe "cannot identify any subcontractors who performed carpentry work on the project, or if the identified subcontractors' combined scopes of carpentry work on a project as shown by their subcontracts and change orders are narrower than the scope of carpentry work required by Peter Schwabe's own contract with project owner, then subcontractors did not perform all of the carpentry work on the project" (Docket # 39 at 9). The Pension Fund surmises that the "only other persons available to perform the remaining carpentry work are Peter Schwabe's own employees." (*Id.*) The Pension Fund argues that Schwabe's "refusal to provide any information concerning its subcontracting of work has made it impossible for the Pension Fund to resolve the subcontracting claim without filing an amended complaint so that it can obtain discovery on the claim." (*Id.* at 8.)

Thus, the Pension Fund seeks to file a Third Amended Complaint, in which it adds a claim under § 301 of ERISA to recover contributions for work that Schwabe allegedly improperly subcontracted to non-union subcontractors. (Docket # 36 at 2.) Schwabe objects

4

to the Pension Fund's motion for leave to file a third amended complaint and has filed its own motion to enforce the parties' settlement agreement. (Docket # 38.) I will address each motion in turn.

1. *Motion to Lift Stay*

The parties jointly requested that this action be stayed for up to six months to allow the parties an opportunity to resolve any outstanding issues. The Pension Fund asserts that the parties have reached an impasse and are requesting the stay be lifted short of the December 29, 2023 deadline. (Docket # 37.) Schwabe "does not object, in principle," to the Pension Fund's request to lift the stay. (Docket # 38 at 7.) As it does not appear the parties' settlement discussion remains fruitful at this juncture and that litigation must continue, I will grant the motion to lift the stay.

2. *Motion to Enforce Settlement Agreement*

After the mediation, the parties purportedly resolved the B&R Claim and were attempting to resolve the Delinquency Claim based on the information obtained during the audit. The parties' settlement discussions reached an impasse, however, when 1099s produced by Schwabe left the Pension Fund questioning whether Schwabe owed additional contributions for its Small Projects Division, either because its own employees were doing covered work, or because it was using non-union subcontractors.

Schwabe argues that the Pension Fund's insistence on receiving information regarding its subcontractors to resolve the Delinquency Claim was not contemplated by the settlement agreement. Schwabe contends that the Pension Fund's request to file a third amended complaint violates the parties' settlement agreement because the Pension Fund is using the subcontractor dispute "as a back door to violate the settlement agreement and expand the

5

scope of the audit." (Docket # 38 at 5.) Schwabe thus asks for the Court to "enforce" the settlement agreement by denying the Pension Fund's motion to file a third amended complaint.

As an initial matter, I agree that the plain language of the settlement agreement does not cover the additional documents the Pension Fund seeks. As stated above, at the time the settlement agreement was signed, the operative complaint addressed only contributions related to Schwabe's employees. In the settlement agreement, Schwabe agreed to produce to the Pension Fund's auditor the following records for all of its employees from January 1, 2020, through December 31, 2021:

- Payroll Registers, Individual Earnings Records, or Time Cards ("Previous audit used "Earnings Code Report")
- Quarterly 941's;
- Quarterly SUTA Reports;
- W-2's and W-3's;
- 1099's and 1096's; and
- Monthly Remittance Reports.

(Docket # 38 at 2.) Schwabe also agreed not to pursue its defense on the merits that it is not bound by the CBA during this period. (Docket # 38-1.) In exchange, the Pension Fund agreed not to seek access to Schwabe's records or to seek contributions for the period *after* December 31, 2021. (*Id.*) This list of documents only includes information regarding Schwabe's employees and does not include, for example, subcontractor invoices.

It does not follow, however, that the settlement agreement prohibits the Pension Fund from pursuing other claims by seeking to amend its complaint. While the parties in their settlement agreement agreed to work in good faith to swiftly complete the audit and resolve any findings and/or damages discovered so that the Pension Fund could dismiss the remainder of any claims it may have for contributions "for hours worked by Peter Schwabe

6

employees between January 1, 2020 and December 31, 2021," (Docket # 38-1 at ¶ 6), it neither waived its pending Delinquency Claim nor agreed not to bring claims for hours worked by non-employees of Schwabe such as subcontractors. For these reasons, the Pension Fund's motion for leave to file an amended complaint does not contravene the parties' settlement agreement. Schwabe's motion to enforce the settlement agreement, i.e., barring a new complaint, is denied.

    3.    *Motion for Leave to File Third Amended Complaint*

The question, then, is whether, under Fed. R. Civ. P. 15, the Pension Fund should be permitted to file a third amended complaint. Generally, a motion for leave to amend a complaint is evaluated under Rule 15(a)(2), which states that: "a party may amend its pleading only with the opposing party's written consent or the court's leave," and that the "court should freely give leave when justice so requires." However, the deadline to amend pleadings was February 17, 2023. (Docket # 18.) While the Court stayed the remaining deadlines on March 16, 2023 pending outcome of mediation (Docket # 26), the Order did not revive the already expired deadline to amend pleadings. When a party seeks to amend the pleadings after the time for doing so has passed as determined by the court's scheduling order, a two-step process applies. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011).

First, the court is entitled to apply the heightened good cause standard of Rule 16(b)(4), under which the primary consideration for the court is the diligence of the party seeking amendment. *Id.* at 719–20. Then, the court considers whether the proposed amendment should be allowed under Rule 15(a)(2), which reflects a liberal attitude towards the amendment of pleadings. *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848–49 (7th Cir. 2002). Rule 15 also reflects a policy that cases generally should be decided on the

merits and not on the basis of technicalities. *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1334 (7th Cir. 1977). Despite these leniencies in the rules, courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice, or where the amendment would be futile. *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009). An amendment is considered "futile" if it would fail to survive a motion to dismiss for failure to state a claim. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997).

It is apparent that the Pension Fund is pursuing this course of action to "force" discovery regarding the subcontractors in the context of the remaining Delinquency Claim. (*See* Docket # 39 at 8, stating that Schwabe's "refusal to provide any information concerning its subcontracting of work has made it impossible for the Pension Fund to resolve the subcontracting claim without filing an amended complaint so that it can obtain discovery on the claim"). As stated above, both the presently controlling complaint and the settlement agreement clearly limit the ERISA claim to contributions for hours worked by Schwabe's *employees*. However, in entering into the settlement agreement, Schwabe agreed to produce its 1099 forms, despite the fact that generally speaking, 1099 forms are not issued to employees, but to independent contractors. And these 1099 forms revealed an apparent information gap for work not clearly attributable to either Schwabe's employees based on the information produced, or to Schwabe's subcontractors, based on the 1099s received. Thus, to determine who did what and when, the Pension Fund seeks to go beyond the 1099s and request documents such as subcontractors' invoices.

I see the Pension Fund's request to amend its complaint as two-fold. First, it still seeks to resolve the remaining Delinquency Claim by determining whether Schwabe violated the

CBA by failing to remit contributions for hours its employees worked. The Pension Fund suspects that perhaps Schwabe employees were performing work covered by the CBA but cannot fill the information gap because the documents it may need to solve the mystery are not explicitly listed in the settlement agreement. As to this issue, it is unclear why the parties would risk undoing months of fruitful collaboration based on what appears to be a minor impasse. The Pension Fund should not need to add a whole new cause of action simply to obtain sufficient discovery for it to satisfy itself that Schwabe employees either were or were not performing this work. However, the Pension Fund found Schwabe's offer to provide job descriptions insufficient. This makes sense, as employees may sometimes perform work outside of their stated job descriptions. But it seems the parties should be able to confer and reach a plan to conduct very limited discovery, beyond the documents enumerated in the settlement agreement, to resolve this single issue. In fact, upon reviewing correspondence between the parties and Schwabe's statements that it is willing to provide additional information, the parties have already made progress towards a resolution. As such, the parties are ordered to confer and propose a schedule for discovery regarding the issue of whether Schwabe employees were performing work covered by the CBA from June 1, 2020, through December 31, 2021. The parties must submit a joint letter on their progress on this issue to the Court by **Monday, January 8, 2024**. In this letter, the parties should also indicate whether a referral to mediate this limited issue would be productive.

But the Pension Fund also seeks to pursue a new claim, unrelated to work performed by Schwabe's employees. The Pension Fund now wants to pursue a claim for work that Schwabe *perhaps* subcontracted out to non-union subcontractors. While the Pension Fund summarily asserts that it did not delay in raising this claim, this case has been pending for

over a year and the deadline to file amended pleadings passed over nine months ago. It does not contend that it was unaware that Schwabe was using subcontractors prior to the audit; thus, whether the subcontractors were union or non-union should have been an issue on the Pension Fund's radar since the inception of this litigation. Nor does it articulate what, exactly, about the 1099 forms leads it to suspect that Schwabe is using non-union subcontractors. In fact, the Pension Fund alleges in its proposed amended complaint that the produced 1099s show that Schwabe *did* make payments to subcontractors covered by the CBA. (Proposed Third Am. Compl. ¶ 14, Docket # 36-1.) In other words, it appears the Pension Fund seeks to engage in a fishing expedition in search of a claim. The parties have spent months diligently working to resolve this case based on the currently pending claim. It would be prejudicial to Schwabe to change course at this juncture of case, particularly in a situation where the Pension Fund has failed to address, much less establish, good cause for its tardy request to amend. For these reasons, the Pension Fund's motion for leave to file a third amended complaint is denied.

### ORDER

**NOW, THEREFORE, IT IS ORDERED** that plaintiffs' motion for leave to file a third amended complaint (Docket # 36) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiffs' motion to lift stay (Docket # 37) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant's motion to enforce settlement agreement (Docket # 38) is **DENIED**.

**FINALLY, IT IS ORDERED** that the parties are to confer and propose a schedule for discovery regarding the issue of whether Schwabe employees were performing work

covered by the CBA from June 1, 2020, through December 31, 2021. The parties must submit a joint letter to the Court by **Monday, January 8, 2024**.

Dated at Milwaukee, Wisconsin this 21st day of December, 2023.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge